**Nat W. PARHAM, Administrator C.T.A. of the Estate of Edna Arnold Caulton, Appellee,**

**v.**

**Carey WALKER, Appellant.**

Court of Appeals of Tennessee, Western Section.

Jan. 12, 1978.

Certiorari Denied by Supreme Court July 10, 1978.

Ira H. Murphy, Memphis, for appellant.

Earl Pat Davis, Memphis, for appellee.

NEARN, Judge.

This is an appeal by the contestant in a will contest case from a jury verdict in favor of the will proponent.

The six Assignments of Error run together and, to a large extent, overlap. They can be divided into two categories—evidentiary complaints and complaints regarding the Court's charge. The evidentiary complaints are without merit. We believe the Trial Court's charge contained positive error and accordingly we must reverse for a new trial.

Since the matter must be retried, we will limit our discussion of the facts.

The facts over which there is no dispute are that testatrix Edna Arnold Caulton became acquainted with the Reverend Isiah Rowser in 1965. At the time the testatrix was approximately 80 years of age with no immediate family. Her estate consisted principally of her homeplace (a modest dwelling) and two valuable commercial lots occupied by a gasoline service station which she had inherited and from which she received a monthly income.

On May 29, 1973, over objection of counsel for Edna Arnold Caulton's relatives, Isiah Rowser was appointed conservator of her estate and remained as such until her death.

On May 30, 1974, Edna Arnold Caulton executed the formal writing styled "LAST WILL AND TESTAMENT OF EDNA ARNOLD CAULTON" which instrument is the subject of this controversy. By this instrument Caulton left everything to her conservator Rowser and named him as executor. The 1974 will recites the reason for leaving everything to Rowser as "in consideration of the care and attention he has shown me and the services he has rendered to me and on my behalf, all of which has been lacking on the part of my relatives."

Edna Arnold Caulton died on May 25, 1975.

Notice of contest of the will was filed and the matter was transferred from the Probate Court of Shelby County to the Circuit Court of that County for a trial on the issue of *devisavit vel non.* Proof pro and con regarding the mental testamentary capacity of the testatrix was adduced as well as proof tending to show the existence or nonexistence of a confidential relationship between the testatrix and Rowser.

Counsel for appellant (will contestant) sought to have the Court instruct the jury that as a matter of fact a confidential relationship existed between the testatrix and Rowser and therefore the "burden of proof shifted" and was upon the will proponent. The Trial Court refused to so charge the jury. The arguments at the trial level, and in this Court, all speak generally of the shifting "burden of proof", but never with specificity as to what burden or of what proof. There we think lies the cause of confusion.

The attack on the 1974 will was two pronged, i. e., one thrust was at the mental capacity of the testatrix and the other was directed at alleged undue influence on the part of Rowser. The proof on these two issues are entirely different. The failure to make a proper distinction between these matters is the error involved.

First, as to the issue of unsound mind. Unless the deceased has already been adjudicated insane at the time of the execution of a will, the burden is always upon the one who alleges an unsound mind to prove it. See *Bridges v. Agee* (1932 M.S.) 15 Tenn.App. 351. Even the existence of a guardianship or conservatorship is not *per se* an adjudication of an unsound mind, that is, an adjudication of mental incapacity to execute a will. *Tucker v. Jollay* (1957 E.S.) 43 Tenn.App. 655, 311 S.W.2d 324. The burden of proving an unsound mind was upon the contestant in this case at all times and never shifted. The Trial Judge did not err in placing that burden of proof on the contestant.

Now we turn to the matter of undue influence. Of course, should a jury in a case where both of these issues were present, find the deceased to be of unsound mind, the issue of undue influence is never reached. Undue influence presupposes a mind of testamentary capacity. Acts of insane minds or minds lacking testamentary capacity are void regardless of influence, undue or not.

It is not influence upon a capable mind that is prohibited. It is the *undue* influence thereof which is the subject of judicial condemnation. *Patterson v. Mitchell* (1929 M.S.) 9 Tenn.App. 662. For the doctrine of undue influence to be applicable there must be a confidential relationship in existence whereby one party (donee-grantee-beneficiary) is in a position, because of the confidential relationship, to exercise undue influence over the mind and will of the other (donor-grantor-testator). *Turner v. Leathers* (1950) 191 Tenn. 292, 232 S.W.2d 269. The burden is upon the one who alleges the existence of such a

confidential relationship to prove it. *In re Estate of Rhodes* (1968) 222 Tenn. 394, 436 S.W.2d 429. Once its existence is proven, undue influence is presumed and the recipient must prove an exception to the presumption by carrying the burden of showing the fairness of the transaction and the non-existence of the presumed undue influence. If the recipient fails in that burden, the transaction is presumed void. *Miller v. Proctor* (1940 M.S.) 24 Tenn.App. 439, 145 S.W.2d 807. There are recognized ways to disprove the existence of undue influence such as independent, competent advice, but they need not here be discussed. *Lyman v. American Nat'l Bank & Trust Co.* (1960 E.S.) 48 Tenn.App. 328, 346 S.W.2d 289.

It should be noted that the Trial Judge evidently relied upon certain statements found in Phillips' Pritchard on the Law of Wills and Administration of Estates (3rd Ed. 1955) and such cases as *Vantrease v. Carl* (1966 M.S.) 56 Tenn.App. 636, 410 S.W.2d 629 and *Thomas v. Hamlin* (1964 W.S.) 56 Tenn.App. 13, 404 S.W.2d 569, as authority for instructing the jury that the existence of a confidential relationship did not raise a presumption that the beneficiary had exercised undue influence and did not cast the burden on the beneficiary of disproving undue influence. The essence of the holding in *Thomas v. Hamlin* was that, under its facts, whether or not a confidential relationship existed between testatrix and beneficiary was a matter for jury determination. It is a lengthy Opinion, but as we read it, that is all it holds. The deceased, while under conservatorship, drafted a will leaving her estate to a relative. She did *not* leave her estate to her conservator. Therefore, the Court never reached the issue of the confidential relationship created by the conservatorship and the presumptions that flow therefrom. The Court in *Thomas v. Hamlin* recognized that it is natural to leave one's estate to relatives and it is also natural that a relationship of confidence exists between relatives, and that proof of the natural relationship of relatives did not establish *per se* the confidential relationship in law which raised the presumption of invalidity. Whether the

blood relationship plus other facts constituted the legal confidential relationship was for jury determination. To the same effect was the holding in *Vantrease v. Carl.* Most recently, our Supreme Court in the case of *Kelly v. Allen,* 558 S.W.2d 845, released December 5, 1977, at Jackson and marked for publication, reiterated the distinctions between the confidentiality inherent in natural blood relationships and legal "confidential relationships". In that case the Court held that in order for the presumption of invalidity to rise in transactions between close family members, not only must the natural confidential relationship be present, but there must be an additional showing of the presence of the elements of dominion and control by the stronger over the weaker or other conditions to establish the destruction of the free agency of the donor. The Court then stated that these rules (requiring more than establishment of confidential relationships) "are not applicable in those cases where a fiduciary relationship exists, e. g., guardian and ward, trustee and cestui que trust, or any other relationship where the law prohibits gifts or dealings between the parties."

The relationship of conservator-ward is one of those cases where the "additional showing" rules are not applicable and the Trial Court erred instructing the jury that the burden of disproving undue influence was *not* on the beneficiary.

In this case the proof shows that the legal relationship of conservator-ward existed between the beneficiary and testatrix at the time of the execution of the 1974 will. We hold that such a Court established relationship is a confidential relationship in law and in fact. Proof of a Court ordered relationship of conservator-ward is not proof of lack of testamentary capacity, but it is proof of a confidential relationship. The conservator is under bond to faithfully perform. The control of the conservator is absolute unless limited by the Court. Section 34–1012 T.C.A. prescribes the duties and powers of a conservator as those of a guardian of a minor. The Trial Court should have charged the jury that a confi-

dential relationship did exist between the testatrix and will beneficiary as a matter of law and the burden was upon the will beneficiary to show the fairness and honesty of the transaction and to negate the presumption of undue influence.

The result is that the cause is reversed for substantial error in the charge and the matter remanded for a new trial.

Honorable T. Mack Blackburn, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Judge Paul R. Summers.

Done at Jackson in the two hundred and second year of our Independence and in the one hundred and eighty-second year of our Statehood.

MATHERNE, J., and BLACKBURN, Special Judge, concur.